# EXHIBIT A

| SUMMONS ||
|---|---|
| **Second Judicial District Court**<br>Bernalillo County, New Mexico<br>400 Lomas NW<br>Albuquerque, NM 87102<br>**Court Telephone:** (505) 841 - 7438 | Case Number: D-202-CV-2018-05629<br><br>Judge:  Hon. C. Shannon Bacon |
| Plaintiff: Louie Va<br>v.<br><br>Defendants: SUNRUN INC. aka Clean Energy Experts LLC and Jane Does 1-10 | Defendant name: SUNRUN INC. aka Clean Energy Experts LLC<br><br>Address: c/o registered agent - The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmingron, DE 19801 |

**TO THE ABOVE NAMED DEFENDANT**: Take notice that:

1.  A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.
2.  You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA). The Court's address is listed above.
3.  You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.
4.  If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.
5.  You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.
6.  If you need an interpreter, you must ask for one in writing.
7.  You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Albuquerque, New Mexico, this _____ day of ____8/1/2018____, 2018

JAMES A. NOEL
CLERK OF THE DISTRICT COURT
By: Cathy Chavez, Deputy

/s/ Sid Childress

Sid Childress, Lawyer
PO Box 2327
Santa Fe, NM 87504
505-433-9823
Attorney for Plaintiffs

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

FILED IN MY OFFICE
DISTRICT COURT CLERK
7/29/2018 11:02 AM
James A. Noel
Dora Bozovic

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

LOUIE VA,

        Plaintiff,

v.                              case no.   D-202-CV-2018-05629

SUNRUN INC. aka CLEAN ENERGY
EXPERTS LLC and Jane Does 1-10,

        Defendants.

## COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, THE UNFAIR PRACTICES ACT AND TORTS

TO THE HONORABLE COURT:

### Introduction

1.      Plaintiff Louie Va ("Plaintiff") is a real person residing in Bernalillo County, New Mexico who may be contacted through her undersigned attorney.

2.      Plaintiff brings this action in accordance with New Mexico state-law and the anti-harrassment provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

1

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited, autodialed or pre-recorded message telemarketing calls to cellular telephones. Section 22 of the New Mexico Unfair Practices Act ("the UPA") is also designed to protect consumer privacy.

4. The TCPA established the National Do-Not-Call Registry ("the Registry"). The Registry allows people to register their telephone numbers and thereby indicate their desire to NOT receive telephone solicitations. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

5. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides private causes of action to persons who receive calls in violation of 47 U.S.C. § 227(b-c).

6. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls to cell phones are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7. In 1991 when Congress passed the TCPA it made a finding that "more than 300,000 solicitors call more than 18,000,000 Americans every day". *FCC Report and Order 03-153, July 3, 2003, paras. 8 & 66* (hereinafter "FCC 03"). As of FCC 03 "the number of **daily**

**calls** [had] increased five fold (to an estimated **104 million**) due in part to the use of new technologies such as predictive dialers." *Id.*

8. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the FCC. *See Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780 ¶1 (July 10, 2015).

9. The Omnibus TCPA Order of July 10, 2015 provides more detail at its paragraph 5:

> "Despite the Commission's efforts to protect consumers without inhibiting legitimate business communications, TCPA complaints as a whole are the largest category of informal complaints we receive. Between 2010 and 2012, consumer complaints about calls to wireless phones doubled, to an average of over 10,000 complaints per month in 2012. In 2013 and 2014, the Commission received roughly 5,000 or 6,000 such complaints per month, lower than in 2011 and 2012, but still a substantial monthly total that is persistently one of the top consumer concerns. The Federal Trade Commission (FTC) reports that it received "approximately 63,000 complaints about illegal robocalls each month" during the fourth quarter of 2009, but that "[b]y the fourth quarter of 2012, robocall complaints had peaked at more than 200,000 per month."

### the Defendants

10. SunRun Inc. ("Defendant") is a Delaware corporation that may be served a Summons by delivery to its registered agent The Corporation Trust Company at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

11. Defendant issued a press release in 2015 indicating it had acquired as a wholly-owned subsidiary an entity named Clean Energy Experts LLC ("CEE"). CEE was directed, operated and controlled by its two (2) manager-members   OMER ATESMAN ("Atesman") and

3

BEAU PEELLE ("Pealle"). Atesman and Peelle continue to manage and direct CEE.

12.  In its press release, Defendant described CEE as "the Nation's Largest Solar Lead Generation Company". In other words, Defendant bragged it had acquired the highest-volume robo-caller - the auto-dialer that had harassed the most people. Defendant's press release explained that it already had "a five-year history of collaborating with CEE to bring affordable residential solar options to consumers" and that "This acquisition builds upon Sunrun's platform of services and tools, which aims to . . . . . . reach as many consumers as possible with a . . . . . low cost structure". Defendant brought cheap sweatshop auto-dialing in-house.

13.  CEE itself, operated and controlled by ATESMAN and PEELLE, makes even less pretense about its occupation. For example, attached hereto as an Exhibit are some of its own statements currently on its website advertisement at ⟨illegible⟩ CEE regularly harasses so many people with its auto-dialers that it alleges "tens of thousands of qualified solar leads each month". It takes millions of nuisance robo-calls to generate "tens of thousands" of "live leads".

14.  Defendants Jane Does 1-10 are real persons who substantially directed, controlled and participated with Defendant, CEE, Atesman and Peelle in the telemarketing conspiracy described below that harassed Plaintiff. Their identities and whereabouts will be discovered so that process can be duly served on them.

## Jurisdiction and Venue

15.  Plaintiff and her cell phone were physically located in Albuquerque at the time of the illegal telemarketing the subject of this Complaint that Defendants and/or their agents

4

harassed her with. Thus venue is proper.

16.     Defendants do business within New Mexico because Defendants regularly, automatically, repeatedly telephone the telephones of New Mexico residents located within New Mexico for the purpose of advertising products and services to New Mexico residents. SunRun Inc. markets and sells products and services throughout the State of New Mexico. By directing telemarketing phone calls into the forum state, Defendants made themselves additionally subject to the personal jurisdiction of the courts of the forum state.

17.     The TCPA was intended to give consumers re-dress even in state small claims courts. See again for example *Mims v. Arrow Fin. Servs., LLC*, supra, 132 S.Ct. at 745-751. This Court has subject matter jurisdiction.

## The Illegal Phone Calls Defendants are Responsible For

18.     In May 2017, Defendants directed a massive illegal auto-dialing campaign into the State of New Mexico, repeatedly harassing many of its residents.

19.     Many of Defendants auto-dialer calls were "spoofed" with 505-area-code VOIP numbers to make it appear on the recipient's Caller ID that the calls were from local 505-area-code callers. Robo-callers do this so the recipients of the calls will be more likely to answer.

20.     The calls were actually initiated from outside the State of New Mexico by Jane Does 1-10 operating call centers at the behest of Defendant, Atesman and Peelle.

21.     Defendants even spoofed some of their calls with a competitors name: SunPower.

22.     There were so many harassing, nuisance, illegal auto-dialer calls, and SunPower received so many complaints and harm to its reputation, that it published a notice a true copy of which is attached hereto as Exhibit 2.

5

23. Plaintiff's telephone is a wireless cell phone assigned the number 505-688-2610.

24. In May 2017 Defendants auto-dialed Plaintiff's cell phone.

25. When Plaintiff answered Defendants' phone call, she immediately experienced the tell-tale indicators of an illegal automatic telephone dialing system ("auto-dialer" or ATDS") - a few seconds of silence or "dead air" and strange noises before a live telemarketer came on the line. Then when the live telemarketer came on the line the telemarketer began a standardized, scripted sales pitch.

26. Plaintiff decided to listen to Defendants' scripted sales pitch solely for the purpose of trying to identify the parties who were responsible for illegally auto-dialing her cell phone with yet another nuisance robo-call.

27. Plaintiff listened for over 15 seconds to Defendants' live telemarketer but the telemarketer never identified the sponsor of the call, and never gave any address of the caller or number the seller could be called back at.

28. If Plaintiff had persisted in questioning Defendants' telemarketer about who the sponsor of the call was or who the auto-dialer was actually calling on behalf of, the telemarketer would only give Plaintiff fake names of non-existent businesses before finally just hanging up the phone.

29. Serial robo-callers such as Defendants always willfully fail and refuse to lawfully identify themselves during their telemarketing conspiracies because the primary method they use to avoid any adverse consequences for their intentional, unlawful conduct is their knowing use of even more unlawful conduct: they fail and refuse to adequately identify themselves to the victims of their conduct. *How can you sue someone if you can't accurately*

6

*identify or locate them?* For this reason the TCPA and New Mexico law (the UPA) have specific requirements for telemarketers to adequately identify themselves and who they are calling for.

### Defendant's Direct or Vicarious Liability

30. For more than 20 years the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

31. The FCC confirmed this principle again in 2013 when it explained that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Id.* at 6586 ¶ 34.

32. The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

7

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

33.     The FCC has rejected a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

34.     Defendant Sunrun Inc. is directly liable and responsible for the phone calls at issue because Defendant actually made or initiated the call to Plaintiff, or Defendant substantially participated. Alternatively Defendant is vicariously liable for the conduct of Defendants Jane Does 1-10 because Defendant:

   a)   authorized the phone calls;

   b)   directly or indirectly controlled the persons who actually made or initiated the calls;

   c)   allowed the telemarketers access to information and operating systems within Defendant's control for the purpose of selling goods and services;

   d)   allowed the telemarketers to enter consumer information into Defendant's sales, dialing or operational systems;

   e)   approved, wrote or reviewed the telemarketing sales script;  OR

   f)   Defendant reasonably should have known or consciously avoided knowing that the actual telemarketers were violating the TCPA and Defendant failed to take effective steps within its power to require compliance with the TCPA.

## More Facts

35. Plaintiff's cell phone number 505-688-2610 has at all relevant times been continuously listed on the National Do-Not-Call Registry ("the Registry").

36. Telemarketers are required by law to subscribe to and comply with the Registry.

37. As evidenced by the initial fact that Plaintiff's phone number at all relevant times has been continuously listed on the Registry, Defendants could not care less that any particular phone number may be listed on the Registry.

38. Defendants' conduct directed at Plaintiff in New Mexico is knowing, willful, wanton, reckless and intentional.

39. Plaintiff has never consented to being auto-dialed or robo-called or to having her privacy invaded and days disrupted by nuisance robot-callers trespassing on her phone.

40. Plaintiff has never had any established business relationship with Defendants.

41. Plaintiff has suffered concrete, particularized and de facto injury as a result of Defendants' conduct set forth above because she had her privacy invaded, was harassed, aggravated and was subjected to a nuisance caused and created by Defendant.

42. Defendant SunRun Inc. a/k/a CEE had the authority and responsibility to prevent or correct the unlawful telemarketing practices that are the subject of this Complaint.

43. Defendant formulated, directed, controlled and participated in the unlawful telemarketing practices that are the subject of this Complaint.

44. Defendant directly and personally participated in, ratified, directed and/or authorized the unlawful telemarketing practices that are the subject of this Complaint.

9

## FIRST CLAIM FOR RELIEF

### (Violations of the Telephone Consumer Protection Act)

45. The foregoing acts and omissions of Defendants and/or their agents acting on their behalf constitute multiple violations of 47 U.S.C. § 227 and its implementing regulations.

46. Defendants and/or their agents called Plaintiff's cell-phone using an ATDS then failed and refused to promptly identify themselves.

47. Plaintiff is entitled to and should be awarded against Defendant $500 in damages for each and every violation of the TCPA and its implementing regulations.

48. Because Defendants' conduct set forth above and/or the conduct of their agents set forth above was knowing and/or willful, Plaintiff is entitled to and should be awarded treble damages of up to $1,500 for each and every violation of the TCPA and its implementing regulations.

## COMMON-LAW CLAIMS

49. Defendants' unlawful behavior set forth above is a nuisance, harassment, trespass, aggravating waste of Plaintiff's time, and is intentional, willful, wanton, knowingly wrong, malicious and reckless.

50. Plaintiff hereby sues Defendant for nuisance and trespass to chattels.

51. Plaintiff hereby sues Defendants for their civil conspiracy.

52. Plaintiff should have and recover judgment against Defendants for all her actual damages, for nominal damages, and for an amount of punitive or exemplary damages sufficient to set an example and deter in the future the conduct complained of by Defendants or others: at least $50,000.00.

## THIRD CLAIM FOR RELIEF

53. Defendants' telemarketer's failure and refusal to identify the sponsor of the call to Plaintiff violated Section 22 of the New Mexico Unfair Practices Act ("the UPA"). Plaintiff hereby sues to recover Plaintiff's attorney fees and costs necessary for this matter and for her statutory damages.

WHEREFORE, Plaintiff prays for entry of judgment for her actual, nominal or statutory and exemplary damages totaling at least $50,000.00 and for such other and further relief as the court deems just, proper and lawful. Plaintiff requests an award of her attorney fees and costs.

RESPECTFULLY SUBMITTED,

By: _____
Sid Childress, Lawyer
PO Box 2327
Santa Fe, NM 87504
childresslaw@hotmail.com
(505) 433 - 9823
Attorney for Plaintiff

Shot

Welcome Solar Professionals!

Get Qualified Leads Today!



How it Works



SunSpot

SUNPWER

We just became aware of a new scam using SunPower's name. According to the report, consumers are receiving calls from a number that comes up with Sun Power (505-207-4573) as the caller ID. There is already information about the scam online to warn other consumers. See https://www.shouldianswer.com/us/1-505-207-4573

If you receive a call pertaining to this update, please reiterate that these calls are not coming from SunPower and that we are not connected with whoever is behind Sun Power (505-207-4573).

FILED IN MY OFFICE
DISTRICT COURT CLERK
7/29/2018 11:02 AM
James A. Noel
Dora Bozovi

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

LOUIE VA,

        Plaintiff,

v.                                  case no. D-202-CV-2018-05629

SUNRUN INC. aka CLEAN ENERGY
EXPERTS LLC and Jane Does 1-10,

        Defendants.

## COURT ANNEXED ARBITRATION CERTIFICATION

TO THE HONORABLE COURT:

    Plaintiff seeks monetary relief in excess of $25,000 exclusive of attorney fees and costs.

RESPECTFULLY SUBMITTED,

By:   /s/ Sid Childress

Sid Childress, Lawyer
PO Box 2327
Santa Fe, NM 87504
childresslaw@hotmail.com
(505) 433 - 9823
Attorney for Plaintiff

1